Caleb Marker (SBN 269721)
ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781
Email: caleb.marker@zimmreed.com

Jeffrey J. Harrington (*Pro hac vice*)
ZIMMERMAN REED LLP
80 South 8th Street, 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
Email: jeffrey.harrington@zimmreed.com

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH AMESCUA, et al., | Case No.: 2:23-CV-09573-MCS-AGR |
| Petitioners, | *Assigned to the Honorable Mark C. Scarsi* |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS OR TO TRANSFER VENUE** |
| PEACOCK TV LLC, | |
| Respondent. | Date: December 18, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C, 7th Floor |
| | Date Action Filed: November 13, 2023 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 1

  A.  Petitioners And Peacock Are Parties To A Written Agreement to Arbitrate
      a Dispute Before JAMS Under Its Rules ............................................... 2

    1.  Peacock's Terms of Use ("TOU") ........................................................ 2

    2.  Petitioners and Peacock are Parties to a TOU ..................................... 3

      a)  Joseph Amescua ............................................................................... 3

      b)  Faith Gobble .................................................................................... 3

      c)  Tyler McDaniel ................................................................................ 4

      d)  Samuel Edwards ............................................................................... 4

      e)  Jacob Gittens ................................................................................... 4

    3.  The TOUs Contain an Agreement to Arbitrate ..................................... 4

      a)  Amescua ........................................................................................... 4

      b)  Gobble .............................................................................................. 5

      c)  McDaniel .......................................................................................... 7

      d)  Edwards ............................................................................................ 9

      e)  Gittens .............................................................................................. 9

  B.  Petitioners Made a Demand for Arbitration .......................................... 10

  C.  Peacock Refused to Arbitrate ............................................................... 10

  D.  A Class Action Complaint Was Filed Asserting Different Claims for
      Different Parties .................................................................................... 11

III. LEGAL STANDARD: MOTION TO DISMISS .............................................. 12

IV.  DISCUSSION: MOTION TO DISMISS ......................................................... 12

  A.  Petitioners Adequately Alleged An Arbitration Agreement ................... 12

  B.  Petitioners Adequately Alleged That They Demanded Arbitration .......... 13

MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MTD OR TRANSFER VENUE

C.    Petitioners Adequately Allege That Peacock Refused to Arbitrate Pursuant to and Under the Terms of the TOU ........................................................... 14

D.    The Petitioner Should Not Be Dismissed Under the First-to-File Rule .... 15

V.    LEGAL STANDARD: MOTION TO TRANSFER ............................................ 17

VI.   DISCUSSION: MOTION TO TRANSFER ........................................................ 18

VII.  CONCLUSION ................................................................................................... 20

MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MTD OR TRANSFER VENUE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ......................................................... 17

*Achey v. Cellco P'ship*,
  293 A.3d 551 (N.J. Super. Ct. App. Div. 2023) ............................................. 6

*Adams v. Postmates, Inc.*,
  414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) ...... 17

*Adams v. Postmates, Inc.*,
  No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) .............................. 17

*Ajida Techs., Inc. v. Roos Instruments, Inc.*,
  87 Cal. App. 4th 534 (2001) ..................................................................... 5

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
  946 F.2d 622 (9th Cir. 1991) .................................................................. 15

*Anoke v. Twitter, Inc.*,
  No. 23-CV-02217-SI, 2023 WL 4234392 (N.D. Cal. June 27, 2023) .......................... 2

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ....................................................................... 18, 19, 20

*Avery v. Integrated Healthcare Holdings, Inc.*,
  218 Cal. App. 4th 50 (2013) ..................................................................... 8

*Badgerow v. Walters*,
  596 U.S. 1 (2022) ................................................................................ 2

*Britvan v. Cantor Fitzgerald, L.P.*,
  No. 216-cv-04075, 2016 WL 3896821 (C.D. Cal. July 18, 2016) ........................... 19

*Casey v. Hill*,
  79 Cal. App. 5th 937 (2022) ................................................................... 19

*Cobb v. Ironwood Country Club*,
  233 Cal. App. 4th 960 (2015) ................................................................... 8

MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MTD OR TRANSFER VENUE

*Dimitroff v. Prevounce Health, Inc.*,
   No. 2:22-CV-03808, 2022 WL 17882150 (C.D. Cal. Aug. 26, 2022) ....................... 19

*Gamboa v. Ne. Cmty. Clinic*,
   72 Cal. App. 5th 158 (2021) ................................................................................ 12, 13

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 ................................................................................................... 6

*Heckman v. Live Nation Entm't, Inc.*,
   No. CV 22-0047-GW-GJSX, 2023 WL 5505999 (C.D. Cal. Aug. 10, 2023)........... 6, 8

*Jacobs v. USA Track & Field*,
   374 F.3d 85 (2d Cir. 2004) ....................................................................................... 14

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .................................................................................... 20

*MacClelland v. Cellco P'ship*,
   609 F. Supp. 3d 1024 (N.D. Cal. 2022).................................................................. 6, 7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) .................................................................................... 18

*Oat Sols., LLC v. Rihko*,
   No. 216-cv-01046, 2016 WL 6602557 (C.D. Cal. Nov. 7, 2016) ............................. 19

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ...................................................................................... 15

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal. App. 4th 1425 (2012)................................................................................... 8

*Pollara v. Radiant Logistics Inc.*,
   No. 12-cv-0344 GAF (SPX), 2012 WL 12887094 (C.D. Cal. Mar. 20, 2012) ........... 19

*Sandoval-Ryan v. Oleander Holdings LLC*,
   58 Cal. App. 5th 217 (2020)....................................................................................... 2

*Scherk v. Alberto–Culver Co.*,
   417 U.S. 506 (1974) ............................................................................................ 18, 19

MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MTD OR TRANSFER VENUE

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021) ......................................................................... 5

*Sky Sports, Inc. v. Super. Ct.*,
   201 Cal. App. 4th 1363 (2011) ............................................................... 12, 14

*State Farm Gen. Ins. Co. v. Watts Regul. Co.*,
   17 Cal. App. 5th 1093 (2017) ..................................................................... 8

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009) ......................................................................................... 2

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ............................................................................... 18

*Wallrich v. Samsung Elecs. Am., Inc.*, No. 19 C,
   No. 19 C 4560, 2023 WL 5934842 (N.D. Ill. Sept. 12, 2023) .................... 17

*Yang v. Mkt. Am., Inc.*, No.,
   No. 17-cv-4012, 2019 WL 13240647 (C.D. Cal. May 13, 2019) ................ 19

**Statutes**

18 U.S.C. § 2710 ............................................................................................ 12

28 U.S.C. § 1404(a) ................................................................................. 18, 20

28 U.S.C. § 1447(c) ......................................................................................... 2

Cal. Code. Civ. P. § 1281.2 ..................................................................... 12, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MTD OR TRANSFER VENUE

## I.    INTRODUCTION

Petitioners are California residents who are current or former subscribers to Peacock TV LLC's ("Peacock") video streaming website peacocktv.com ("Website"). Petitioners filed a petition to compel arbitration in state court and Peacock removed it to this Court. Peacock has now filed a motion to dismiss or transfer the petition.

Peacock's motion to dismiss should be denied. Petitioners have adequately alleged all the elements to state a claim to compel arbitration: (a) Petitioners and Peacock are parties to a written arbitration agreement to arbitrate a dispute before JAMS under its rules; (b) Petitioners made a demand for arbitration; and (c) Peacock refused to arbitrate. Peacock attempted to escape arbitration before JAMS by unilaterally modifying its terms first to impose an unconscionable mass arbitration process with another arbitration administrator and later by unilaterally deleting arbitration from the agreement altogether in violation of its duty of good faith and fair dealing. However, for those reasons and additional reasons set forth below, Peacock's efforts do not nullify the parties' agreement to arbitrate before JAMS.

Peacock's motion to transfer venue to New York also should be denied. The parties arbitration agreement contains an arbitration forum-selection clause that selects California as the forum for arbitration-related matters with respect to the Petitioners. Peacock drafted the arbitration agreement and now cannot argue that venue in California is inconvenient.

Thus, for the reasons set forth herein, the Petitioners respectfully request that this Court deny Peacock's motion in its entirety.

## II.    BACKGROUND

On October 9, 2023, Petitioners filed a Petition for An Order Compelling Arbitration against Peacock in Los Angeles Superior Court. *See* ECF No. 1-2, Ex. A-2 ("Petition"). The Petition is made under Section 1281.2 of the California Arbitration Act ("CAA"). Petition ¶ 39. It alleges that Petitioners and Peacock are parties to a written agreement to arbitrate, that Petitioners made a demand for arbitration under the

agreement, and that Peacock refused to arbitrate as required under the agreement. *Id.* ¶¶ 161–84, Prayer for Relief ¶¶ 1–3. Petitioners seek an order compelling Peacock to arbitrate as required under the agreement. Prayer for Relief ¶ 1. Under the CAA, "[the] petition to compel arbitration is simply a suit in equity seeking specific performance of a contract." *Sandoval-Ryan v. Oleander Holdings LLC*, 58 Cal. App. 5th 217, 222 (2020).

On November 13, 2023, Peacock filed a Notice of Removal and removed the Petition to this Court. *See* ECF No. 1 ("Notice") at 1. On November 20, 2023, Peacock filed this Motion. *See* ECF No. 11 ("Motion"). Peacock noticed the hearing on the Motion for December 18, 2023. *Id.* at 1.[1]

As set forth in detail below, the Petition alleges the following: (A) Petitioners and Peacock are parties to a written agreement to arbitrate a dispute before JAMS under its rules; (B) Petitioners made a demand for arbitration; and (C) Peacock refused to arbitrate.

**A.   Petitioners And Peacock Are Parties To A Written Agreement to Arbitrate a Dispute Before JAMS Under Its Rules**

**1.   Peacock's Terms of Use ("TOU")**

Peacock requires subscribers to its Website to agree to the TOU. Petition ¶¶ 16, 45. Peacock issued several TOUs between April 2020 when the Website went live and

---

[1] Petitioners intend to file a motion to remand based on the Court's lack of subject matter jurisdiction over the Petition. On November 27, 2023, counsel had a meet and confer call and agreed in principle to continuing the hearing on Peacock's Motion to January 8, 2024, to coincide with Petitioners' forthcoming motion to remand. A scheduling stipulation will be filed with the Court. Petitioners believe the remand motion will moot Peacock's Motion. The basis for Petitioners' remand motion is that the Court may look only to the Petition to ascertain its jurisdiction because the Petition is made under Section 1281.2 of the CAA, not Section 4 of the Federal Arbitration Act. *See Badgerow v. Walters*, 596 U.S. 1, 5 (2022), *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009); *Anoke v. Twitter, Inc.*, No. 23-CV-02217-SI, 2023 WL 4234392, at *2 (N.D. Cal. June 27, 2023). The Petition does not raise a federal question nor allege an amount in controversy. The Petition raises a purely state law question and seeks specific performance of the arbitration agreement. Thus, Section 1447(c) requires remand. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

July 6, 2023. *Id.* ¶¶ 17, 46, 128-29. For purposes of the Petition, there are three TOUs: the "Original TOU," the "Modified TOU," and the "Non-Arbitration TOU."

The Original TOU was Peacock's TOU before November 26, 2022. The Original TOU is attached to the Petition as Exhibits B-E and quoted verbatim in the Petition at paragraphs 49-59. *See* ECF No. 1-4, Ex. A-4, A-5, Declaration of Caleb Marker ISO Petitioners' Petition and Exhibits ("Marker Decl.").

The Modified TOU was Peacock's TOU between November 27, 2022, and July 5, 2023. The Modified TOU is attached to the Petition as Exhibits F-G and quoted verbatim in the Petition at paragraphs 60-83. *See* ECF No. 1-4, Ex. A-4, A-5.

The Non-Arbitration TOU is Peacock's TOU since July 6, 2023. The Non-Arbitration TOU is attached to the Petition as Exhibit N and quoted verbatim at paragraphs 128-29. *See* ECF No. 1-4, Ex. A-4, A-5.

### 2. <u>Petitioners and Peacock are Parties to a TOU</u>

Each Petitioner is or was a subscriber of Peacock's Website. Petition ¶¶ 16, 44. To subscribe to the Website, each Petitioner was required to agree to Peacock's TOU. *Id.* ¶ 45. This Petition covers ~25,000 people, each listed by name in Exhibit A-1 and A-2 of the Marker Declaration. This Memorandum has selected five Petitioners to illustrate the facts and arguments that apply to those who are parties to the TOUs like them.

#### a) <u>Joseph Amescua</u>

Petitioner Joseph Amescua of Northridge, California, began and ended his Website subscription under the Original TOU. Amescua began his Website subscription on July 4, 2020 and ended his subscription on February 4, 2022. Declaration of Joseph Amescua ("Amescua Decl.") ¶ 5, *see* Petition ¶¶ 85-86, 165.

#### b) <u>Faith Gobble</u>

Petitioners Faith Gobble of Carmichael, California, began her subscription under Original TOU and ended her subscriptions after Peacock attempted to change the arbitration terms with Modified TOU. Gobble began her Website subscription on July 15, 2021 and ended her subscription on March 1, 2023. Declaration of Faith Gobble

("Gobble Decl.") ¶ 3; see Petition ¶ 176.

        c)    <u>Tyler McDaniel</u>

Petitioners Tyler McDaniel of Los Angeles, California, began his subscription under Original TOU and is a current subscriber. McDaniel began his Website subscription on April 27, 2022. Declaration of Tyler McDaniel ("McDaniel Decl.) ¶ 5, *see* Petition ¶¶ 181-82.

        d)    <u>Samuel Edwards</u>

Petitioners Samuel Edwards of Ontario, California, began and ended his subscription under the Modified TOU. Edwards began his Website subscription on January 21, 2023 and ended his subscription on April 23, 2023. Declaration of Samuel Edwards ("Edwards Decl.") ¶ 3; *see* Petition ¶ 171.

        e)    <u>Jacob Gittens</u>

Petitioners Jacob Gittens of Redwood City, California, began his subscription under Modified TOU and is a current subscriber. Gittens began his Website subscription on December 5, 2023. Declaration of Jacob Gittens ("Gittens Decl.) ¶ 5; *see* Petition ¶¶ 181-82.

**3.**    <u>**The TOUs Contain an Agreement to Arbitrate**</u>

        a)    <u>Amescua</u>

Amescua and Peacock are parties to a TOU that requires arbitration at JAMS. Amescua began and ended his Website subscription under the Original TOU before Peacock made any modifications to it. *See* Amescua Decl. ¶ 3; Marker Decl. Exs. B-E. The Original TOU requires arbitration of all disputes by a JAMS arbitrator under JAMS's rules. Petition ¶¶ 49, 51; Marker Decl. Exs. B-E § 18 ¶¶ 2-3. Peacock may only modify the Original TOU prospectively. Petition ¶¶ 58-59; Marker Decl. Exs. B-E § 1 ¶ 3, § 18(j). The Original TOU's arbitration provisions survive termination. Marker Decl. Exs. B-E § 22(j). Courts enforce a party's contractual duty to arbitrate disputes after termination of the agreement giving rise to that duty. *See Ajida Techs., Inc. v. Roos Instruments, Inc.*, 87 Cal. App. 4th 534, 545 (2001). Thus, Amescua and Petitioners like

him are parties to a TOU that requires arbitration of disputes by JAMS.

        b)   <u>Gobble</u>

Gobble and Peacock are parties to a TOU that requires arbitration at JAMS. Gobble first became a subscriber to the Website under the Original TOU. *See* Gobble Decl. ¶ 3. Gobble continued to be a subscriber after Peacock purported to modify the Original TOU with the Modified TOU. *Id*. The Modified TOU, like the Original TOU, requires arbitration of all disputes before a JAMS arbitrator under JAMS's rules. Petition ¶¶ 63, 65; Marker Decl. Exs. F-G § 18 ¶¶ 1-4. Like the Original TOU, the arbitration provisions of the Modified TOU survive termination. Marker Decl. Exs. F-G § 22(j).

The Modified TOU, however, purports to add a Mass Arbitrations provision to arbitrate with ADR Services. Petition ¶¶ 71-72; Marker Decl. Exs. F-G § 18(a). For several reasons, the Mass Arbitrations provision is inapplicable and unenforceable to Gobble:

First, Gobble did not receive proper notice from Peacock of the Mass Arbitrations provision. Petition ¶¶ 92-94. Peacock posted the Modified TOU at a hyperlink at the bottom of the Website's login page, and this is known as a "browsewrap" agreement that is not sufficient to bind consumers like Gobble. *Id*. ¶¶ 92-93; Marker Decl. Ex. I; *see Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021), *reh'g denied*, (Jan. 18, 2022), *review denied*, (Apr. 13, 2022) ("[A] browsewrap agreement…—in which the website provider assumes assent is given by mere use of the website, based exclusively on the existence of a hyperlink that takes the consumer to the applicable set of contractual terms—is not sufficient to bind the consumer.").

Second, the Mass Arbitrations provision is procedurally unconscionable because it is oppressive and the result of surprise. It is oppressive because, among other things, Gobble and Peacock had unequal bargaining power and the TOU was not the result of real negotiation or meaningful choice. The TOU was a contract of adhesion. The Mass Arbitrations provision is also the result of surprise because the Mass Arbitrations provision was, among other things, a modification hidden behind a hyperlink at the

bottom of the Website and set up a process that was contrary to the arbitration provisions of the Original TOU. Petition ¶ 98; *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003), *as modified on denial of reh'g*, (Jan. 8, 2004) (stating standards for unconscionability).

Third, the Mass Arbitrations provision is substantively unconscionable and unenforceable because it requires Gobble to pay prohibitively high fees that she would not be required to pay had she brought her claims in court, fees that are higher than Peacock's fees, and fees that would dwarf the potential damages recovery. Petition ¶ 100; *id.* ¶ 52 and Marker Decl. Ex. H (JAMS fees); *id*. ¶¶ 73-77 and Marker Decl. Ex. J, K (ADR Services fees); *Gutierrez*, 114 Cal. App. 4th at 90 ("To state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high. Whatever preference for arbitration might exist, it is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself.").

Fourth, the Mass Arbitrations provision is substantively unconscionable and unenforceable because it contains "stacking" provisions to delay the arbitration process. Petition ¶ 101. The courts have rejected this tactic. *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022); *Heckman v. Live Nation Entm't, Inc.*, No. CV 22-0047-GW-GJSX, 2023 WL 5505999, at *6 (C.D. Cal. Aug. 10, 2023); *Achey v. Cellco P'ship*, 293 A.3d 551, 558 (N.J. Super. Ct. App. Div. 2023).

Fifth, the Mass Arbitrations provision is substantively unconscionable and unenforceable because it restricts Gobble's choice of counsel by changing the arbitration rules depending on whether the same or coordinated counsel is involved in multiple arbitrations. Petition ¶ 102; *MacClelland,* 609 F. Supp. 3d at 1040.

Sixth, the Mass Arbitrations provision is inapplicable to Gobble because she is not the "same" or "similar party" to another Petitioner for the purposes of the provision. Petition ¶ 104; Marker Decl. Exs. F-G § 18(a) ("For any matter that…involve the same or similar parties…Arbitration will be conducted by ADR Services….").

Because the Mass Arbitrations provision in the Modified TOU is unenforceable, the arbitration provision in the Original TOU applies to Gobble. Petition ¶ 109. The Original TOU states that "[i]f any modification pursuant to this subpart (j) is deemed to be invalid, unenforceable, or illegal, then the arbitration provisions effective at the time of your agreement to these Terms shall govern any dispute or disagreement between you and us regarding the Peacock Transactions or Relationships." *Id*. ¶ 109; Marker Decl. Ex. B-E § 18(j). The Modified TOU also has a severability provision, which permits the Court to sever the unenforceable Mass Arbitrations provision from the Modified TOU. Petition ¶¶ 111-13; Marker Decl. Exs. F-G § 18(f). Thus, Gobble and Petitioners like her are parties to a TOU that requires arbitration of disputes by JAMS.

        c)    <u>McDaniel</u>

McDaniel and Peacock are parties to a TOU that requires arbitration at JAMS. McDaniel first became a subscriber to the Website under Original TOU. *See* McDaniel Decl. ¶ 3. McDaniel was a subscriber when Peacock introduced the Non-Arbitration TOU. *Id*.

The Non-Arbitration TOU purports to delete arbitration and add a Dispute Resolution provision to the TOU. The Dispute Resolution provision provides that "neither party shall be required to arbitrate any claims against the other." Petition ¶ 129; Marker Decl. Ex. N § 18. However, by the time the Non-Arbitration TOU went into effect on July 6, 2023, McDaniel had already filed his Demand for Arbitration with JAMS. Petition ¶¶ 122, 126; Marker Decl. Exs. A-1, A-2, R, S, W, X; Harrington Decl. Ex. H.

For several reasons, the Dispute Resolution provision is inapplicable and unenforceable to McDaniel:

First, the Dispute Resolution provision is substantively unconscionable because it violates the implied duty of good faith and fair dealing with respect to McDaniel's claims. Petition ¶¶ 106, 146-151. "[T]he implied covenant of good faith and fair dealing prevents one party to an arbitration agreement from unilaterally changing the arbitration process with respect to claims that had already accrued." *State Farm Gen. Ins. Co. v. Watts Regul.*

*Co.*, 17 Cal. App. 5th 1093, 1100 (2017); *see also Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963 (2015) ("When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights. Plaintiffs certainly did not *agree* to any such illegal impairment in this case."); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 61 (2013) ("[A party] may not make unilateral changes to an arbitration agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the [other party's] expectations regarding how the agreement applied to those claims."); *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1433 (2012) ("[A]n arbitration contract containing a modification provision is illusory if an amendment, modification, or revocation—a contract change—applies to claims that have accrued or are known to the [party who may modify the contract]. If a modification provision is restricted—by express language or by terms implied under the covenant of good faith and fair dealing—so that it exempts all claims, accrued or known, from a contract change, the arbitration contract is not illusory. Were it otherwise, [the party with the unilateral right to modify the agreement] could amend the contract in anticipation of a specific claim, altering the arbitration process to the [other party's] detriment and making it more likely the [the modifying party] would prevail. The [modifying party] could also terminate the arbitration contract altogether, opting for a judicial forum if that seemed beneficial to the company."); *Heckman v. Live Nation Entm't, Inc.,* No. CV 22-0047-GW-GJSX, 2023 WL 5505999, at *8 (C.D. Cal. Aug. 10, 2023) ("As a result, the TOU expressly contemplates that unilateral changes made by Defendants will be applied to already accrued claims— and indeed that is precisely what Plaintiffs allege happened, fundamentally altering the nature of the bargain in the process. The implicit protections of the covenant of good faith and fair dealing will not save a unilateral contract modification in such situations.").

Second, the Dispute Resolution provision is procedurally unconscionable because

it is oppressive and the result of surprise. Petition ¶ 145; *see supra* Gobble I.A.3.b.

Third, the Dispute Resolution provision cannot apply retroactively under the terms of both the Original TOU and the Modified TOU. Petition ¶¶ 136-139; Marker Decl. Exs. B-G § 1 ¶ 3, § 18(j).

Fourth, McDaniel did not receive proper notice of the Dispute Resolution Provision. Petition ¶¶ 140-41; *see supra* Gobble I.A.3.b.

Like the Original TOU, the Modified TOU states that if "any modification is deemed to be…unenforceable, then the arbitration provisions effective at the time of your agreement to these TO[U] shall govern any dispute." Petition ¶ 149; Marker Decl. Ex. F-G § 18(h). Because the Dispute Resolution provision in the Non-Arbitration TOU is unenforceable, and Mass Arbitrations provision in the Modified TOU is unenforceable and severable for the reasons set for as to Gobble, the arbitration provision in the Original TOU, which requires arbitration of disputes by JAMS, applies to McDaniel. Petition ¶ 150; *see supra* Gobble I.A.3.b. Thus, McDaniel and Petitioners like him are parties to a TOU that requires arbitration of disputes by JAMS.

        d)   <u>Edwards</u>

Edwards and Peacock are parties to a TOU that requires arbitration at JAMS. Edwards began and ended his Website subscription under the Modified TOU before Peacock introduced the Non-Arbitration TOU. *See* Edwards Decl. ¶ 3. However, for the reasons set forth above as to Gobble, the Mass Arbitrations provision is also inapplicable and unenforceable with respect to Edwards. *See supra* Gobble I.A.3.b. The Mass Arbitrations provision is severable, and the remaining arbitration provision requires arbitration of disputes before a JAMS arbitration under JAMS's rules. *See id*. Thus, Edwards and Petitioners like him are parties to a TOU that requires arbitration of disputes by JAMS.

        e)   <u>Gittens</u>

Gittens and Peacock are parties to a TOU that requires arbitration at JAMS. Gittens first became a subscriber to the Website under Modified TOU. *See* Gittens Decl. ¶ 3.

9

Gittens continued to be a subscriber when Peacock introduced the Non-Arbitration TOU. *Id*. The Non-Arbitration TOU purports to delete arbitration and add a Dispute Resolution provision to the TOU, which provides that "neither party shall be required to arbitrate any claims against the other." Petition ¶ 129; Marker Decl. Ex. N § 18. By the time the Non-Arbitration TOU went into effect, Gittens had already filed his Demands for Arbitration with JAMS. Petition ¶¶ 122, 126; Marker Decl. Exs. A-1, A-2, R, S, W, X; Harrington Decl. ¶ J.

For the reasons set forth above as to McDaniel, the Dispute Resolution provision is inapplicable and unenforceable to Gittens. *See supra* McDaniel I.A.3.c. Furthermore, for the reasons set forth above as to Gobble, the Mass Arbitrations provision is inapplicable and unenforceable with respect to Gittens. *See supra* Gobble I.A.3.b. Thus, the remaining arbitration provision applicable to Gittens requires arbitration of disputes before a JAMS arbitration under JAMS's rules. *See id*. Thus, Gittens and Petitioners like him are parties to a TOU that requires arbitration of disputes by JAMS.

## B.    Petitioners Made a Demand for Arbitration

On June 28, 2023, 5,891 Petitioners including Amescua, Gobble, and McDaniel each filed a Demand for Arbitration with JAMS pursuant to their TOUs. Petition ¶ 122; Marker Decl. Exs. A-1, R, S; Harrington Decl. Exs. F (Amescua Demand), G (Gobble Demand), H (McDaniel Demand).

On July 5, 2023, an additional 19,483 Petitioners including Edwards and Gittens each filed a Demand for Arbitration with JAMS pursuant to their TOUs. Petition ¶ 126; Marker Decl. Exs. A-2, W, X; Harrington Decl. Exs. I (Edwards Demand), J (Gittens Demand).

## C.    Peacock Refused to Arbitrate

On July 5, 2023, counsel for Peacock refused to arbitrate, stating to JAMS that "in no event does JAMS have jurisdiction here." Marker Decl. Ex. Y.

On July 7, 2023, counsel for Peacock told counsel for Petitioners that it was refusing to arbitrate by asserting that the "new terms are now effective [the Dispute

10

Resolution provision of the Non-Arbitration Demand] and any claims not already deemed filed (and filed in the correct forum) must be filed in court." Marker Decl. Ex. Z. Counsel for Peacock further refused to arbitrate by stating that "***none*** of the approximately 31,000 arbitrations you are attempting to file with JAMS are subject to ***any*** arbitration provision (let alone an arbitration provision before JAMS).... If [your clients] wish to bring an action against Peacock they can simply file an individual or class action complaint against Peacock in court." *Id.* (emphasis added).[2]

On July 17, 2023, JAMS's Senior Vice President, who was not appointed the arbitrator of any Claims, notified counsel that "JAMS appears to lack jurisdiction to administer these filings." Marker Decl. Ex. AA. JAMS's Vice President stated that JAMS is "unable to proceed with administration at this time," unless there is "a court order compelling the parties to arbitration at JAMS." *Id.*

**D.    A Class Action Complaint Was Filed Asserting Different Claims for Different Parties**

On July 21, 2023, three plaintiffs filed a Class Action Complaint against Peacock TV LLC (*Shapiro v. Peacock TV LLC*) in the United States District Court for the Southern District of New York. None of the Petitioners are parties to *Shapiro* and none of the plaintiffs in *Shapiro* are Petitioners. Rather, Petitioners are all California residents, and the *Shapiro* plaintiffs are New York residents. *Compare* Petition ¶ 15 and Marker Decl. Ex. A-1, A-2, *with* Marker Decl. Ex. BB (Class Action Complaint) ¶¶ 6–8. This Petition and the *Shapiro* Complaint do not have the same claims. The Petition seeks to compel arbitration under the CAA, while the Class Action Complaint asserts violations of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *Compare* Petition ¶¶ 161–184, *with* Marker Decl. Ex. BB ¶¶ 103–111. No class has been certified in *Shapiro*.

---

[2] The Petition only addresses the ~25,000 individual Petitioners residing in California and their demands for arbitration. Petition. ¶ 122 n. 10. However, a total of ~31,000 demands were filed on June 28 and on July 5, the balance being claimants residing outside California.

MEM. OF POINTS AND AUTHORITIES IN OPP. TO MTD OR TRANSFER VENUE

Petitioners here are not members of a certified class.

## III.   LEGAL STANDARD: MOTION TO DISMISS

Peacock seeks to dismiss the Petition for failure to state a claim to compel arbitration. Section 1281.2 provides that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." *Id*. § 1281.2. Thus, to state a claim to compel arbitration under the CAA, a party must allege: (a) an arbitration agreement; (b) a demand for arbitration; and (c) a refusal to arbitrate. *Sky Sports, Inc. v. Super. Ct.*, 201 Cal. App. 4th 1363, 1368 (2011).

## IV.   DISCUSSION: MOTION TO DISMISS

Petitioners met their burden to state a claim to compel arbitration.

### A.   Petitioners Adequately Alleged An Arbitration Agreement

Petitioners adequately alleged they and Peacock are parties to an arbitration agreement. *See* Cal. Code. Civ. P. § 1281.2; *Sky Sports*, 201 Cal. App. 4th at 1368. Petitioners must prove an arbitration agreement by a preponderance of the evidence. Whether Petitioners met their burden is determined by a three-step burden shifting process. *Gamboa v. Ne. Cmty. Clinic*, 72 Cal. App. 5th 158, 164–66 (2021).

First, Petitioners must state verbatim the arbitration provisions in the agreement or provide a copy of it. *Id*. In the second step, the burden shifts to Peacock to "challenge[]the authenticity of the agreement." *Id*. Finally, if Peacock meets its burden, then in the third step, Petitioners must establish with admissible evidence a valid arbitration agreement between the parties. *Id*.

Petitioners easily satisfy the first step. All Petitioners are or were parties to an arbitration agreement with Peacock. *See supra* I.A.

Peacock argues that Petitioners have not shown that any of them formed an agreement to arbitrate with Peacock, thought it does not seriously contest the existence

of its own TOUs. ECF No. 11-1 ("Mem. in Supp.") at 9–12. However, as shown above, Petitioners demonstrated they formed an agreement to arbitrate with admissible evidence: Declarations from Amescua, Gobble, McDaniels, Edwards, and Gittens and copies of each applicable TOU. *See supra* I.A. Counsel for Petitioners asked counsel for Peacock to compare the list of Petitioners against Peacock's own data to establish the subscription and TOU history for each Petitioner. Harrington Decl. ¶ 2. Peacock declined to do so. *Id*. Peacock has known the identities of the Petitioners since July 2023 when the Demands were filed. They could have checked their records and presented evidence that no Petitioner has an arbitration agreement with Peacock, but has not done so.

Peacock also argues that the Mass Arbitrations provision of the Modified TOU requires arbitration of Petitioners' claims by an ADR Services arbitrator under ADR Services's rules. Mem. in Supp. at 10. However, as shown above, the Mass Arbitrations provision does not apply to the Petitioners for the reasons explained. *See supra* I.A.3.

Finally, Peacock asserts that the Dispute Resolution provision of the Non-Arbitration TOU supersedes all prior TOUs and therefore no Petitioner is a party to an arbitration agreement. Mem. in Supp. at 11-12. However, as shown above, the Dispute Resolution provision does not apply to the Petitioners and Peacock's own terms require that prior arbitration provisions survive termination . *See supra* I.A.3.

Thus, Petitioners established the existence of a written arbitration agreement with Peacock, which requires arbitration by JAMS under JAMS's rules.

**B.      Petitioners Adequately Alleged That They Demanded Arbitration**

Petitioners adequately alleged they demanded arbitration. *See* Cal. Code. Civ. Proc. § 1281.2; *Sky Sports*, 201 Cal. App. 4th at 1368. Petitioners alleged they demanded arbitration of their dispute before JAMS. On June 28, 2023, 5,891 Petitioners including Amescua, Gobble, and McDaniel each filed a Demand for Arbitration with JAMS pursuant to their TOUs. *See supra* I.B. On July 5, 2023, an additional 19,483 Petitioners including Edwards and Gittens each filed a Demand for Arbitration with JAMS pursuant to their TOUs. *See supra* I.B. Thus, Petitioners adequately alleged they demanded

arbitration.

**C.   Petitioners Adequately Allege That Peacock Refused to Arbitrate Pursuant to and Under the Terms of the TOU**

Petitioners adequately alleged that Peacock refused to arbitrate under the agreement. *See* Cal. Code. Civ. Proc. § 1281.2; *Sky Sports*, 201 Cal. App. 4th at 1368. Peacock refused to arbitrate Petitioners' claims before JAMS under the applicable TOUs. Peacock unambiguously asserted to JAMS that "in no event does JAMS have jurisdiction here." Marker Decl. Ex. Y. Peacock also unambiguously claimed that "none of the approximately 31,000 arbitrations you are attempting to file with JAMS are subject to any arbitration provision…." Marker Decl. Ex. Z. Peacock cannot credibly argue that JAMS was the sole actor who refused to arbitrate Petitioners' claims. As shown above, Peacock cannot credibly argue that JAMS was the incorrect arbitral forum. *See supra* I.A.3.

Peacock relies on *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) to further its argument that it was Petitioners who refused to arbitrate by not bringing their arbitration demands to ADR Services. Mem. in Supp. at 13–14. *Jacobs* is easily distinguishable. In *Jacobs*, both Jacobs and USA Track agreed that they were parties to an agreement to arbitrate disputes before the AAA, but they disagreed about the rules that would govern. *See Jacobs*, 374 F.3d at 88. By contrast, Peacock does not agree that it is a party to an agreement to arbitrate *at all*, let alone before JAMS. Counsel for Peacock specifically stated to Petitioners' counsel that "*none of the approximately 31,000 arbitrations you are attempting to file with JAMS are subject to any arbitration provision* (let alone an arbitration provision before JAMS)…. If [your clients] wish to bring an action against Peacock *they can simply file an individual or class action complaint against Peacock in court*." Marker Decl. Ex. Z. (emphasis added). Thus, Petitioners adequately alleged that Peacock refused to arbitrate.[3]

---

[3] If this Court finds that Petitioners have not adequately alleged facts to state a claim to compel arbitration, Petitioners request leave to amend the Petition.

MEM. OF POINTS AND AUTHORITIES IN OPP. TO MTD OR TRANSFER VENUE

**D.    The Petitioner Should Not Be Dismissed Under the First-to-File Rule**

The "first-to-file" rule is "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The issues and parties must be the same because "if the issues or parties involved in the two suits were not the same, adherence to the first-to-file rule would be reversible error for it would constitute a misapplication of the law." *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 n.13 (9th Cir. 1991).

Peacock argues this Court should dismiss the Petition without prejudice under the first-to-file rule because of the Class Action Complaint filed in *Shapiro*. However, as previously noted, this Petition and *Shapiro* do not have the same parties. *Compare* Petition ¶ 15 and Marker Decl. Exs. A-1, A-2, *with* Marker Decl. Ex. BB (Class Action Complaint) ¶¶ 6–8. A class is not yet certified in *Shapiro*. Petitioners here are not members of a certified class. This Petition and the *Shapiro* Complaint do not have the same claims. The Petition seeks to compel arbitration, while the Class Action Complaint alleges violations of the VPPA. *Compare* Petition ¶¶ 161–184, *with* Marker Decl. Ex. BB ¶¶ 103–111. Thus, to dismiss or transfer under the first-to-file rule would be a "misapplication of the law." *Alltrade*, 946 F.2d at 628 n.13.

Peacock also insinuates that the Petitioners "are behaving improperly." Mem. in Supp. at 18. But Peacock forgets how the parties got here and why. As set forth in the Petition, Peacock embraced arbitration. Petition ¶¶ 1–3. Peacock drafted the TOUs requiring arbitration of claims and waiver of class actions. *See id.* ¶¶ 16–22. Petitioners followed the requirements of the TOUs and filed individual Demands for Arbitration in JAMS, reasonably asserting that JAMS was the appropriate and agreed-upon arbitral forum. *See id.* ¶ 29. Peacock initially asserted that JAMS did not have jurisdiction. *See id.* ¶ 30. Peacock then  unilaterally modified the TOU to omit arbitration and urged Petitioners to bring their claims in court. *Id.* ¶¶ 31- 32. Based on Peacock's arguments,

15

JAMS asserted that it did not have jurisdiction to arbitrate the Petitioners' claims absent a court order. *See id.* ¶ 33.

Given the successive actions of Peacock to change terms to derail Petitioners, there is nothing remotely "improper" in what the Petitioners have done. The plaintiffs in *Shapiro* filed the Class Action Complaint to preserve their claims in the event a court or arbitrator would accept Peacock's arguments and find that there is no arbitration agreement between the parties. *See id.* ¶ 34. The Petitioners filed the Petition to preserve their right to an arbitral forum. *See id.* ¶ 34. The Class Action Complaint was filed in New York because the Non-Arbitration TOU did not have a California arbitration forum-selection provision (it deleted arbitration), but rather had a New York forum-selection provision. Marker Decl. Ex. N. The Petition was filed in California because the Petitioners are California residents, the Petitioners requested Los Angeles as the arbitration site in their Demands, and the applicable TOUs have a California arbitration forum-selection provision, as applied to the California Petitioners, to be within 100 miles of their home whether it is determined to be Los Angeles or another California city. Marker Decl. Exs. A-1 (list of Petitioners), A-2 (list of Petitioners), B-F (Original TOU), R (example of a June 2023 Demand for Arbitration), W (example of a July 2023 Demand for Arbitration).

Peacock also takes a shot at Petitioners for seeking to arbitrate before JAMS in order to "wield [the] potential [arbitration] fees as a cudgel to improperly leverage a settlement from Peacock." Mem. in Supp. at 18. Other companies have tried, and failed, to persuade courts with these kinds of arguments to get out of the arbitration terms they drafted. As noted in the Petition, courts see the Petitioners' actions for what they are—a fulfillment of their individual contractual obligations: "Petitioners did what they are contractually required to do: submit individual arbitration demands to the arbitrator." *Adams v. Postmates, Inc.* ("*Adams II*"), No. 19-3042 SBA, 2020 WL 1066980, at *6 (N.D. Cal. Mar. 5, 2020). Courts see the irony in Peacock's about-face on arbitration. *Wallrich v. Samsung Elecs. Am., Inc.*, No. 19 C 4560, 2023 WL 5934842, at *13 (N.D.

16

Ill. Sept. 12, 2023) ("The company may not have expected so many would seek arbitration against it, but neither should it be allowed to "blanch[ ] at the cost of the filing fees it agreed to pay in the arbitration clause.") (decision currently stayed on appeal); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020) (describing the company's refusal to pay fees associated with its own-drafted arbitration clause as "hypocrisy" and "irony upon irony"); *Adams v. Postmates, Inc.* ("*Adams I*"), 414 F. Supp. 3d 1246, 1252 n.2 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) ("[T]he possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.").

Finally, Peacock claims Petitioners are engaged in a "bad faith course of conduct" by filing the Petition "nearly three months after filing a federal class action." Mem. in Supp. at 18. This charge is without merit. *Shapiro* was filed on July 21, 2023, but not served on Peacock until September 27, 2023. *See Shapiro v. Peacock TV LLC*, No. 7:23-cv-06345-KMK (S.D.N.Y), ECF Nos. 1, 5. This Petition was filed on October 9, 2023, and served on Peacock on October 12, 2023. ECF Nos. 1, 1-1. The service of the Class Action Complaint and the Petition was only fifteen days apart. There was no "bad faith."

Thus, because the first-to-file rule does not apply to the Petition, the Court should not dismiss the Petition on that basis.

## V.    LEGAL STANDARD: MOTION TO TRANSFER

Peacock alternatively asks this Court to transfer the Petition to the Southern District of New York under 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A valid forum-selection clause "represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). "When parties agree

17

to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. An arbitration agreement that specifies the venue of arbitration-related proceedings is an enforceable forum-selection clause. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.4 (9th Cir. 1988) (citing *Scherk*, 417 U.S. 506) ("[A]n agreement to arbitrate is actually a specialized forum selection clause.").

## VI.    DISCUSSION: MOTION TO TRANSFER

This Court should deny Peacock's motion to transfer the Petition from California to New York. Petitioners and Peacock selected California as the proper forum for arbitration and the Petition in the applicable TOUs. Petition ¶¶ 55, 66; Marker Decl. Exs. B-E § 18(c) and F-G § 18(d). This arbitration provision is a "specialized kind of forum-selection clause." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) (cleaned up). "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk*, 417 U.S. at 519; *see Manetti-Farrow*, 858 F.2d at 514 n.4 (9th Cir. 1988) (citing *Scherk*, 417 U.S. 506) ("[A]n agreement to arbitrate is actually a specialized forum selection clause."); *Casey v. Hill*, 79 Cal. App. 5th 937, 970 (2022), *as modified on denial of reh'g* (June 21, 2022), *review denied* (Aug. 31, 2022) (citing *Scherk*, 417 U.S. at 519) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.").

Courts in this District have viewed an arbitration clause as "functionally equivalent to a forum selection clause." *Pollara v. Radiant Logistics Inc.*, No. 12-cv-0344 GAF (SPX), 2012 WL 12887094, at *5 (C.D. Cal. Mar. 20, 2012); *see also Yang v. Mkt. Am.,*

*Inc.*, No. 17-cv-4012, 2019 WL 13240647, at \*2 (C.D. Cal. May 13, 2019) (enforcing arbitration forum selection clause); *Oat Sols., LLC v. Rihko*, No. 216-cv-01046, 2016 WL 6602557, at \*3 (C.D. Cal. Nov. 7, 2016) (same); *Britvan v. Cantor Fitzgerald, L.P.*, No. 216-cv-04075, 2016 WL 3896821, at \*3 (C.D. Cal. July 18, 2016) (same).

In this case, the TOU's arbitration provision specifically calls for arbitration to be within 100 miles of a Petitioner's home in California. Petition ¶¶ 55, 66; Marker Decl. Exs. B-E § 18(c) and F-G § 18(d). This is "a specialized kind of forum-selection clause," drafted by Peacock, that "represents the parties' agreement as to the most proper forum." *Scherk*, 417 U.S. at 519; *Atl. Marine*, 571 U.S. at 63. Peacock drafted the TOU's arbitration provision and it "waive[s] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine, 571 U.S.* at 64.

While Peacock points to the general New York forum-selection clause at the end of the TOU, the specific and "specialized" California arbitration forum-selection clause is "the parties' agreement as to the most proper forum" for arbitration-related matters. *Id.* at 63; *see also Dimitroff v. Prevounce Health, Inc.*, No. 2:22-CV-03808, 2022 WL 17882150, at \*2 (C.D. Cal. Aug. 26, 2022) ("[A]rbitration clauses can serve multiple functions, only one of which is to specify a particular manner of dispute resolution. In addition, an arbitration clause acts as a specialized kind of forum-selection clause when the parties elect to designate the situs of suit. …In this case, the parties chose not only to arbitrate their disputes but also to resolve those disputes in Los Angeles County. Under *Scherk*, this provision operates as a forum-selection clause, as it evinces the parties' mutual intent to resolve disputes arising out of or relating to their contract in Los Angeles County.") (cleaned up).

Even if the New York forum-selection clause governed this Petition, "the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 63. A transfer to New York does not promote "the interest of justice." Petitioners are all California residents who are petitioning under

California law and Peacock has significant contacts in California. Petition ¶¶ 40-42. Although the general forum-selection clause designates New York as the forum, the interests of justice demonstrate that California is a more appropriate forum due to the arbitration-specific forum-selection clause. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) ("Although the forum selection clause designates Pennsylvania as the exclusive forum, the court determined that other factors 'clearly' demonstrated that California was more appropriate.").

Finally, Peacock argues that transfer to New York will not inhibit Petitioners' efforts to obtain an order compelling arbitration because, pursuant to the Modified TOU's arbitration provision, disputes under a certain threshold are arbitrated by written submission. Mem. in Supp. at 21. Peacock's argument actually supports Petitioners' position to maintain this action in California: If the parties can arbitrate on the written submission, then a transfer to New York does not "promote in the interests of justice" because Peacock can just as well proceed by written submissions in an arbitration administered in California.

Thus, this Court should not grant Peacock's motion to transfer venue.

## VII.   CONCLUSION

For the reasons set forth above, this Court should deny Peacock's motion to dismiss or transfer venue in its entirety.

Respectfully submitted,

ZIMMERMAN REED LLP

Date: November 27, 2023          By:   /s/ Caleb Marker
                                        Caleb Marker
                                        6420 Wilshire Blvd., Suite 1080
                                        Los Angeles, CA 90048
                                        Tel: (877) 500-8780
                                        Fax: (877) 500-8781
                                        Email: caleb.marker@zimmreed.com

                                       ZIMMERMAN REED LLP

                                       Jeffrey J. Harrington (*Pro hac vice*)

20

80 South 8th Street, 1100 IDS Center
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
Email:jeffrey.harrington@zimmreed.com

*Attorneys for Petitioners*

MEM. OF POINTS AND AUTHORITIES IN OPP. TO MTD OR TRANSFER VENUE

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Petitioners certifies that this brief contains 6,882 words, which complies with the word limit of L.R. 11-6.1.

MEM. OF POINTS AND AUTHORITIES IN OPP. TO MTD OR TRANSFER VENUE