Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2341
Facsimile: (415) 636-5965

Attorney for Respondent
Peacock TV LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH AMESCUA, JENNA HARBIN, CHRISTOPHER BARULICH, MICHELIAH ISLAND, TYLER MCDANIEL, AND 25,369 OTHER CALIFORNIA INDIVIDUALS,<br><br>              Petitioners,<br><br>      v.<br><br>PEACOCK TV LLC,<br><br>              Respondent. | Case No. 2:23-cv-09573-MCS-AGR<br><br>**PEACOCK TV LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE PURSUANT TO FIRST-TO-FILE RULE AND 28 U.S.C. § 1404(a)**<br><br>Judge:          Hon. Mark C. Scarsi<br><br>Motion Date:  January 8, 2024<br>Motion Time:  9:00 a.m.<br>Courtroom:    7C, 7th Floor<br><br>Action Filed:  November 13, 2023 |

# **<u>TABLE OF CONTENTS</u>**

I.     THE PETITIONERS ARE MISJOINED. ...........................................3

II.    PEACOCK DID NOT REFUSE ARBITRATION.............................5

     A.     The Petitioners Only Demanded Arbitration Under the October 2022 Terms. .................................................................5

     B.     Peacock Never Refused to Arbitrate Under the October 2022 Terms. ..................................................................................8

III.   THE PETITION SHOULD ALSO BE DISMISSED OR TRANSFERRED UNDER THE FIRST-FILED RULE AND FORUM SELECTION CLAUSE. .........................................................9

CONCLUSION .......................................................................................11

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>**Cases**</u>                                                                                                     **Page(s)**

3

*Bernal v. Kohls Corp.*,
     5:23-cv-01779-PA-SHK (C.D. Cal. dismissed Nov. 7, 2023),
     ECF 52...................................................................................................10, 11

*Brooks v. Warnermedia Direct LLC*,
     2:23-cv-07579-GW-MRW (C.D. Cal. dismissed Dec. 4, 2023),
     ECF 55, *entered at* ECF 57 ................................................................ 10-11

*Coughlin v. Rogers*,
     130 F.3d 1348 (9th Cir. 1997)...............................................................4

*Dowell v. WinCo Holding, Inc.*,
     2023 WL 5276609 (C.D. Cal. July 17, 2023) ................................9

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
     2007 WL 108969 (N.D. Cal. Apr. 11, 2007) ................................5

*Jacobs v. USA Track & Field*,
     374 F.3d 85 (2d Cir. 2004).................................................................8

*Mansouri v. Superior Court*,
     181 Cal. App. 4th 633 (3d Dist. 2010) .......................................5, 7

<u>**Statutes**</u>

Cal. Code § 1281.2 .....................................................................................5

N.Y.C.P.L.R. § 7502 .................................................................................4

<u>**Rules**</u>

Fed. R. Civ. P. 20......................................................................................3

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   Notwithstanding Petitioners' efforts to substantively amend their Petition by
2   attaching "example" declarations to their Opposition, Petitioners' filing underscores
3   the myriad reasons why the Petition should be dismissed or transferred to New York
4   where a companion class action is pending.

5       *First*, the Opposition makes it obvious that, if not outright dismissed or
6   transferred, this single Petition cannot be maintained on behalf of more than 25,000
7   people.  The Opposition's focus on five "example petitioners" demonstrates that the
8   Petitioners are not at all similarly situated in their efforts to compel arbitration at
9   JAMS.  For instance, the Petitioners allege that two of them continue to use Peacock
10  even after Peacock removed its arbitration clause in July 2023, while another started
11  and terminated a subscription while only the October 2022 Terms applied.
12  Although the Opposition tries to cram each Petitioner's arguments into a single
13  filing, it asserts different arguments on behalf of each "example" individual,
14  sometimes claiming that notice of the term changes was deficient and in other places
15  arguing that Peacock's changing of ADR providers is unconscionable (apparently
16  because Peacock's selected ADR provider charges filing fees that, before reductions
17  or waivers, cost only $130 more than a claim filed in this Court).  These individuals
18  are completely misjoined.

19      *Second*, irrespective of individualized circumstances, the Opposition exhibits
20  confirm what was apparent from the Petition's original exhibits: each Petitioner
21  demanded arbitration *solely* under the October 2022 Terms.  None of the Petitioners
22  demanded arbitration under any of the pre-October 2022 Terms that the Petition
23  now purports to invoke.  Opp'n, Exs. F-J (JAMS demands of example Petitioners),
24  at 4.  Because the October 2022 Terms—which designate ADR Services as the
25  arbitral forum—were the *only* terms invoked by the Petitioners in both their pre-
26  filing correspondence with Peacock and their purported filings with JAMS, it is only
27  the October 2022 Terms that are operative in evaluating the Petition.
28

1

PEACOCK TV LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE
CASE NO. 2:23-cv-09573-MCS-AGR

*Third*, the Petitioners never complied with the terms of the contract under which they demanded arbitration by filing at ADR Services.[1]  Instead, they seek selective enforcement of the contractual provisions.  The October 2022 Terms did not provide any special rules for conducting mass arbitrations, they simply changed the ADR provider when more than 19 claimants alleged the same claims through the same counsel.  Had Petitioners' claims been filed in the proper arbitral forum, Peacock would have arbitrated them.  Indeed, both Peacock and JAMS told the Petitioners that JAMS was the wrong forum for these cases, but Petitioners refused to switch.  And, if the switch to ADR Services made Peacock's terms unconscionable, the correct recourse is to rescind the arbitration agreement and to allow the parties to litigate in court—a remedy both Peacock *and* Petitioners' counsel have already embraced.

The Petitioners seek arbitration only at JAMS because they know their claims are frivolous and that only the pressure of JAMS higher arbitration fees could drive a settlement here.  Indeed, in the New York action, Petitioners' counsel has withdrawn some of the specific allegations made in both their original complaint, ECF 11-3, and their arbitration demands.  In the New York case, Petitioners' counsel amended the complaint to acknowledge what Peacock has said from the outset: no information about the viewing of Peacock's subscriber programming was ever disclosed to Facebook.  *See* First Amended Complaint, *Shapiro v. Peacock TV LLC*, No. 7:23-cv-06345-KMK (S.D.N.Y. Nov. 16, 2023), ECF 8, ¶ 41 (Peacock used Meta Pixel on URLs containing only publicly available trailers/episode lists); Petition Ex. Z, at 2.

The Petition should be dismissed or transferred to New York.

---

[1] Petitioners never even perfected their demands *with JAMS* because they never paid filing fees.  *See* Petition, Ex. T (Peacock June 28, 2023 letter to JAMS), at 2.

## I.    THE PETITIONERS ARE MISJOINED.

The Opposition's identification of five "example" Petitioners makes clear that the circumstances under which each individual seeks to compel are entirely different.  *See* Opp'n ¶ 3.  The Federal Rules provide that "persons may join in one action as plaintiffs if: (A) they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions of occurrences; *and* (B) any question of law or fact common to *all* plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a) (emphases added).  Even assuming the first requirement is met, there is no single question of law or fact regarding the Petition that is common to *all* Petitioners—each claims entitlement to arbitrate based on different legal arguments.

As previously detailed, since July 2020, Peacock has periodically updated its Terms of Use.  The Petitioners divide these historical terms into three groups, which they say apply variously to each Petitioner depending on the circumstances:

   i.   Terms of Use pre-dating Peacock's adoption in October 2022 of a
        provision selecting ADR Services as a provider for some cases;

   ii.  the October 2022 Terms selecting ADR Services; and,

   iii. the June 6, 2023 Terms (effective July 6, 2023) eliminating
        arbitration.

The Opposition thereby creates at least eight possible classes of Petitioners:

| No. | Subscription Start Date | Subscription End Date |
|-----|-------------------------|------------------------|
| 1 | before October 2022 | before October 2022 |
| 2 | before October 2022 | between October 2022 & July 2023 |
| 3 | before October 2022 | after July 2023 |
| 4 | before October 2022 | ongoing |
| 5 | after October 2022 | between October 2022 & July 2023 |
| 6 | after October 2022 | after July 2023 |
| 7 | after October 2022 | ongoing |
| 8 | never | no subscription |

Petitioners advance different arguments for each group.  For example, the Opposition argues that Petitioners who both initiated and terminated subscriptions with Peacock before October 2022 (group 1) never agreed to the October 2022

1    Terms.  But these claims are barred by limitations provisions requiring claims
2    against Peacock to be brought within one year of their occurrence.  *See, e.g.*,
3    Petition, Ex. E (March 2021 Terms) § 22(e).  Moreover, insofar as the Petition
4    purportedly arises under state law, Peacock could resolve the limitation issue in
5    court irrespective of an arbitration agreement.  *See id.* § 18(d); N.Y. CPLR
6    § 7502(b) (a party may assert a time limitation "as a bar to [an] arbitration [in]
7    court").

8         Other Petitioners seek to invalidate the October 2022 Terms for lack of
9    notice (groups 2-4).  *See* Opp'n ¶ 3(b).  But this argument is unavailable to any
10   Petitioner who became a subscriber—and therefore expressly consented to the
11   October Terms—after they went into effect (groups 5-7), or to those who had actual
12   notice of them.

13        Still other Petitioners, regardless of when they became Peacock subscribers,
14   *continue to use* Peacock's services (groups 4 & 7).  These individuals had actual
15   notice of Peacock's elimination, effective July 2023, of its arbitration provision as
16   evidenced by their letter *addressing this very change.*  Petition, Ex. V.  By
17   continuing to use Peacock's services nonetheless, these individuals consented to the
18   July 2023 Terms and cannot compel arbitration.

19        If the Petition is not dismissed or transferred for the reasons below, the proper
20   course is to sever all 25,373 Petitioners, except the lead petitioner, through dismissal
21   without prejudice.  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997)
22   (affirming dismissal of "six classes" of individuals alleging INS had delayed
23   adjudicating their claims for status because each "claim raises potentially different
24   issues" and no efficiency was promoted by joinder).

25
26
27
28

## II.    PEACOCK DID NOT REFUSE ARBITRATION.

Misjoinder aside, the Petition must be dismissed (with prejudice[2]) with respect to *all* Petitioners because it fails to establish Peacock's refusal to arbitrate under the operative October 2022 Terms.  Here, the Petition purports to be brought pursuant to California Code § 1281.2.  As explained in *Mansouri v. Superior Court*: "[A] petition to compel arbitration under section 1281.2 is in essence a suit in equity to compel specific performance of a contract.  The elements of a cause of action for specific performance of a contract include not only the contract, but defendant's breach of the contract . . . [T]here is no breach of an agreement to arbitrate unless there has been a demand to arbitrate and a refusal to arbitrate *under the agreement*."[3]  181 Cal. App. 4th 633, 641-42 (3d Dist. 2010) (emphasis added).

In their Opposition, the Petitioners present a menu of agreements under which they seek to compel arbitration.  But Petitioners made their arbitration demands under *one, and only one,* agreement—the October 2022 Terms.  This Court cannot compel arbitration under any other.  And Peacock did not breach those Terms by refusing to arbitrate.  "Without a breach, there is no cause of action for specific performance of the arbitration agreement and therefore, no basis for a petition to compel under section 1281.2."  *Id.* at 642.  The Petition must be dismissed.

### A.    The Petitioners Only Demanded Arbitration Under the October 2022 Terms.

The October 2022 Terms are the operative terms because in all correspondence with Peacock and JAMS, and every demand for arbitration filed at JAMS, the Petitioners invoked arbitration solely under those Terms.  At no time

---

[2] If dismissal is granted becuse Peacock never refused to arbitrate, then the dismissal should be with prejudice.  Petitioners could, however, still seek relief via declaratory judgment.

[3] The FAA similarly requires refusal as a pre-requisite to a petition to compel.  *See In re Cintas Corp. Overtime Pay Arb. Litig.*, No. C06-1781 SBA, 2007 WL 1089695, at *6 (N.D. Cal. Apr. 11, 2007).

prior to the filing of the Petition did any Petitioner demand arbitration with Peacock under pre-October 2022 Terms.  Specifically:

April 21, 2023.  Zimmerman filed with JAMS eleven arbitration demands. Petition ¶ 116.  Each of the eleven demands sought arbitration under the Terms of Use available on Peacock's website on April 21, 2023.  *See id.* (citing Ex. M, "example April 2023 demand" shown below):



The arbitration agreement available on Peacock's website in April 2023 contained the provision requiring more than 19 similar claimants with similar claims to arbitrate at ADR Services.[4]

June 22, 2023.  Zimmerman sent Peacock a single "pre-filing notice of dispute" summarizing the VPPA claims of approximately 31,675 additional individuals named in a spreadsheet.  Petition, Ex. Q.

Zimmerman argued that although Peacock's Terms contained a mass arbitration provision identifying ADR Services as the provider, that provision did not apply to the identical claims of the 31,675 individuals because the claims did "not 'involve the same or similar parties.'"  *Id.*

---

[4] In April 2023, the Terms of Use available on Peacock's website were dated January 30, 2023.  With respect to its dispute resolution provisions and venue clause, the January 2023 Terms are identical to the October 2022 Terms.  *See* Petition Ex. G §§ 18, 22.

Zimmerman's June 22 letter did *not* argue that any of these individuals were former Peacock subscribers, nor that any of them sought arbitration with Peacock pursuant to old, pre-October 2022 Terms. *See id.*

June 28, 2023.  Six days later, Zimmerman purported to file demands with JAMS on behalf of 5,891 individuals.[5]  Petition ¶ 122.  In its accompanying cover letter, Zimmerman repeated that these 5,891 individuals demanded arbitration under the October 2022 Terms.[6]  Petition Ex. S, at 2; *accord* Petition ¶ 122 & Ex. R, at 4 (example June 2023 demand).

July 5, 2023.  Zimmerman purported to[7] file seven days later its third set of 19,483 demands, again at JAMS.  The cover letter accompanying these demands stated pointedly: "In sum, 31,678 total claims have been filed against Peacock.  ***All are subject to a single arbitration agreement*** contained in Peacock's Terms of Use, which are attached and available here [at a URL linking to the January 2023 Terms]."  Petition Ex. X, at 1 (emphasis added); *accord* Petition ¶ 126 & Ex. W, at 4 (example July 2023 demand).

Consequently, all Petitioners demanded arbitration with Peacock under the provisions of an arbitration agreement requiring them to arbitrate at ADR Services. They cannot now invoke *other* agreements pursuant to which they never made demands.  *See Mansouri*, 181 Cal. App. 4th at 641-42.  The October 2022 Terms are the operative terms for evaluating this Petition.

---

[5] Peacock does not agree that these demands were ever filed.  Upon receiving them, JAMS informed the Petitioners they hadn't paid filing fees.  *See* Petition, Ex. T, at 2.

[6] In fact, as noted, the 5,891 demands sought arbitration under Peacock's January 2023 Terms.

[7] *See* note 5.

PEACOCK TV LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE
CASE NO. 2:23-cv-09573-MCS-AGR

**B.    Peacock Never Refused to Arbitrate Under the October 2022 Terms.**

Notwithstanding that all Petitioners demanded arbitration under the October 2022 Terms requiring them to arbitrate at ADR Services, none of them ever did. The Petitioners strategically opted instead to file at JAMS.  When Peacock objected that JAMS was the wrong forum, JAMS agreed and declined to administer the demands.  Peacock's *objection* did not constitute a *refusal.*  *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (objection to AAA does not constitute "refusal to arbitrate").

The Petitioners say *Jacobs* is distinguishable because the parties there agreed they were parties to an arbitration agreement but "disagreed about the rules."  Opp'n at 14.  But the facts in *Jacobs* mimic the facts here with regard to the forum. Peacock told both the Petitioners and JAMS that if the Petitioners sought to arbitrate, they must file their demands at ADR Services pursuant to the Terms. Specifically:

(1) when on June 28, 2023, Zimmerman purported to file 5,891 demands with JAMS, Peacock objected "because JAMS [wa]s not the resolution provider for the mass arbitration that Zimmerman s[ought] to initiate."  Petition, Ex. T, at 1. Peacock did not refuse arbitration altogether.

(2) likewise, when on July 5, 2023, Zimmerman purported to file 19,483 additional demands with JAMS, Peacock reiterated that "Zimmerman c[ould] try to argue to ADR Services that the cases should be in front of JAMS" but, under the mass arbitration provision, JAMS did not have jurisdiction.  Petition Ex. Y, at 3.

To argue otherwise, the Petitioners rely on a single statement by Peacock's counsel in a July 7, 2023 letter that "none of the approximately 31,000 arbitrations you [Zimmerman] are attempting to file with JAMS are subject to any arbitration provision (let alone an arbitration provision before JAMS)."  Opp'n at 14.  But that statement was made after the July 2023 Terms took effect and in the context of

Petitioner's suggestion that they were all current subscribers.  **Had Petitioners filed their claims at ADR Services, Peacock would have arbitrated their demands.**  It was the *Petitioners* (not Peacock) who declined to comply with the contract they now purport to enforce.  They cannot have it both ways.  Because Peacock did not refuse to arbitrate, the Petition should be dismissed.

### III.     THE PETITION SHOULD ALSO BE DISMISSED OR TRANSFERRED UNDER THE FIRST-FILED RULE AND FORUM SELECTION CLAUSE.

The Opposition does not seriously dispute that the first-filed rule applies.  It notes that the named plaintiffs in the New York class action are not participating in the Petition and, conversely, the Petitioners are not part of a certified class.  Opp'n at 15.  But "[w]here the cases involve class actions, . . . courts compare the classes, not the class representatives."  *Dowell v. WinCo Holding, Inc.*, No. 523-cv-00976-JLS-JDE, 2023 WL 5276609, at *1 (C.D. Cal. July 17, 2023).  The Petitioners admit they would be members of the proposed New York class.  Petition ¶ 34.  That fact is determinative, and the Petition should be dismissed in favor of the first-filed action.

Alternatively, the Petition should be transferred to New York pursuant to either the first-filed rule or the forum selection clause in Peacock's Terms.

All of Peacock's old Terms (like the July 2023 Terms) contained a forum selection provision.  These provisions provided in relevant part: "Subject to the arbitration provisions [herein] . . . any action or proceeding arising from, relating to or in connection with these Terms will be brought exclusively in the federal or state courts located in New York, New York, and you [subscriber] irrevocably consent to the personal jurisdiction of such courts and agree that it is a convenient forum." *E.g.*, Petition, Ex. F (October 2022 Terms) § 22(b).

The October 2022 Terms (and earlier Terms) also contained an arbitration location provision that stated in relevant part:

1
2
3
> The Arbitration shall be held either: (i) at a location determined under the Applicable Rules that is reasonably convenient for you and is no more than 100 miles from your home or place of business; or (ii) at another location you and we agree upon.

4   *See, e.g.*, *id.* § 18(d).

5   The Petitioners argue that the arbitration location provision constitutes a

6   "specialized California arbitration forum-selection clause [reflecting] the parties'

7   agreement as to the most proper forum for arbitration-related matters," which

8   trumps the New York forum selection clause.  Opp'n at 19.  This argument

9   misreads the Terms and the key caselaw.

10   Unlike the cases Petitioners rely upon, the arbitration location provisions in

11   Peacock's earlier Terms did not specify a *particular* arbitration location (e.g., Los

12   Angeles, California).  Rather, Peacock permitted *arbitrations* to occur at varying

13   locations convenient to a claimant or any other mutually agreeable locale.  This

14   decision reflected Peacock's willingness with respect to *arbitrations* to engage in

15   dispute resolution in multiple fora.  Notwithstanding this concession, Peacock's

16   Terms provided unambiguously that, other than arbitrations, "any action or

17   proceeding arising from, relating to or in connection with the[] Terms" would occur

18   in New York.  This is exactly such a proceeding.  *Bernal v. Kohls Corp.*, 5:23-cv-

19   01779-PA-SHK (C.D. Cal. dismissed Nov. 7, 2023), ECF 52, at 3-5 (a petition to

20   compel arbitration is not subject to arbitration).

21   In fact, two judges of this court recently granted transfers in cases with

22   strikingly similar fact patterns, holding that a forum selection clause applied to

23   petitions to compel arbitration, notwithstanding the potential availability of

24   arbitration in a more convenient forum.  *Brooks v. Warnermedia Direct LLC*, 2:23-

25   cv-07579-GW-MRW (C.D. Cal. dismissed Dec. 4, 2023), ECF 55 (tentative

26   ruling), at 8-9 (transferring petition to compel arbitration to New York even if

27   arbitrations occur in California because requiring petition to be brought in New

28   York, "like other non-arbitrable claims, is not highly surprising or outside the

10

1 parties' reasonable expectations"), *entered at* ECF 57; *Bernal*, 5:23-cv-01779-PA-
2 SHK, ECF 52, at 5-7 (same).  Such a structure sensibly prevents duplicative
3 proceedings and the potential for conflicting decisions that the Petitioners'
4 interpretation would embrace.

**CONCLUSION**

The Petition should be dismissed or transferred to the District Court for the
Southern District of New York.

Dated: December 11, 2023          Respectfully submitted,

                                  **ZWILLGEN LAW LLP**

                                  By:   */s/ Sheri B. Pan*
                                  Sheri B. Pan (SBN 316136)
                                  sheri@zwillgen.com

                                  *Attorney for Respondent*
                                  *Peacock TV LLC*

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Peacock TV LLC certifies that this brief contains 2,999 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 11, 2023          */s/ Sheri B. Pan*
                                   Sheri B. Pan

PEACOCK TV LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE
CASE NO. 2:23-cv-09573-MCS-AGR